THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ALVARO ALEXANDER LEON ARIAS,<br><br>Petitioner,<br><br>v.<br><br>RUBEN LEYVA, et al.,<br><br>Respondents. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:26-cv-00812-RJS<br><br>District Judge Robert J. Shelby |

Before the court is Petitioner Alvaro Alexander Leon Arias's Petition for Writ of Habeas Corpus.[1] For the reasons discussed below, the court GRANTS the Petition.

## BACKGROUND[2]

Leon is a citizen of Columbia.[3] In December 2022, Leon entered the United States without inspection and turned himself over to U.S. immigration authorities at the U.S.-Mexico border.[4] U.S. authorities allowed Leon to enter the United States to seek asylum, where he has remained since.[5] In August 2023, Leon submitted an application for asylum, which remains pending.[6] He currently resides in West Valley City, Utah.[7]

---

[1] Dkt. 1, *Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241* (*Petition*); *see* 28 U.S.C. § 2243 (authorizing the issuance of a writ of habeas corpus).

[2] The following facts are drawn from the Petition; Dkt. 11, *Federal Respondents' Response to Petition for Habeas Corpus* (*Response*); Dkt. 12, *Reply in Support of Petition* (*Reply*); Dkt. 14, *Federal Respondents' Sur-Reply to Petitioner's Reply* (*Respondents' Sur-Reply*); and Dkt. 15, *Reply in Support of Petition* (*Leon's Sur-Reply*).

[3] *Petition* ¶ 43.

[4] *Id.* ¶ 3; *id.* at 14.

[5] *Id.* ¶¶ 3–4.

[6] *Id.* ¶ 5; *Response* at 2.

[7] *Petition* ¶ 7.

On May 10, 2026, Leon was arrested by state authorities in Park City, Utah following a report of domestic violence.[8] The State charged Leon with felony Aggravated Assault Resulting in Serious Bodily Injury, Damage/Interrupt Communication Device, and Aggravated Assault, as well as misdemeanor charges for Voyeurism and Distribution of an Intimate Image.[9] U.S. Immigration and Customs Enforcement (ICE) subsequently issued an arrest warrant and placed an immigration detainer on Leon.[10] On September 1, 2026, Leon received a bail hearing in state court.[11] The state court issued a temporary order of release to facilitate transfer to federal authorities,[12] and ICE assumed custody of Leon.[13] Later that day, Leon filed the Petition and an Emergency Motion to Stay Transfer.[14]

On September 3, 2026, ICE issued Leon a form I-286, Notice of Custody Determination, which provided him the option to request or decline a custody determination by an immigration judge.[15] Leon did not mark either box requesting or declining a custody determination; instead, he refused to sign the form.[16] Leon states he refused to sign because he did not understand the document.[17] After speaking with his defense attorney by phone, Leon verbally requested a bond hearing multiple times from ICE officers and from the immigration judge at his master calendar

---

[8] *Id.* ¶¶ 9–10.

[9] *Response* at 2.

[10] *Id.* at 3; *see also* Dkt. 11-1, *Warrant for Arrest of Alien* (*Arrest Warrant*).

[11] *Petition* ¶¶ 11, 15; *see also* Dkt. 1-3, *Minutes Detention Hearing, Order of Release* (*Order of Release*).

[12] *Petition* at 5; *Order of Release* at 2.

[13] *Petition* ¶ 33; *Response* at 3.

[14] *Petition*; Dkt. 3, *Emergency Motion to Stay Transfer During Pendency of Petition* (*Motion*).

[15] *Response* at 3; *see also* Dkt. 11-2, *Notice of Custody Determination*.

[16] *Response* at 3; *Notice of Custody Determination* (both boxes unchecked and indicating Leon "refused to sign" the Notice of Custody Determination).

[17] *Reply* at 5; *Leon's Sur-Reply* at 3; *see also* Dkt. 12-1, *Declaration of Katarine Garcia-Morales* ¶ 5.

hearing.[18] Leon had not retained an immigration attorney to handle his bond redetermination as of the time he filed his Sur-Reply.[19]

On September 3, 2026, this court ordered Respondents to show cause why the Petition should not be granted.[20] The court also granted in part the Motion to Stay Transfer, requiring Respondents not to remove or transfer Leon outside the boundaries of the Tenth Circuit while the court considers the Petition.[21] On September 9, 2026, the Government filed its Response.[22] On September 17, 2026, Leon filed a Reply in support of the Petition,[23] and Respondents filed a Sur-Reply on September 22, 2026 as ordered.[24] On September 23, 2026, Leon filed a Sur-Reply as well.[25]

## LEGAL STANDARD

Habeas corpus "test[s] proceedings so fundamentally lawless that imprisonment pursuant to them is not merely erroneous but void."[26] The court may issue a writ of habeas corpus if a petitioner is "in custody in violation of the Constitution or laws . . . of the United States."[27] Leon bears the burden of establishing his detention is unlawful.[28]

## ANALYSIS

Leon challenges his detention on three grounds: (1) his arrest and continued detention

---

[18] *Leon's Sur-Reply* at 3.

[19] *Id.* at 5.

[20] Dkt. 9, *Order to Show Cause.*

[21] *Id.* at 7.

[22] *Response*.

[23] Dkt. 12, *Reply in Support of Petition* (*Reply*).

[24] *Respondents' Sur-Reply*; *see also* Dkt. 13, *Docket Text Order* (ordering Respondents to file a Sur-Reply).

[25] *Leon's Sur-Reply*.

[26] *Fay v. Noia*, 372 U.S. 391, 423 (1963).

[27] 28 U.S.C. § 2241(c)(3).

[28] *See Walker v. Johnston*, 312 U.S. 275, 286 (1941).

violates the Immigration and Nationality Act (INA) and Fifth Amendment Due Process Clause, (2) Respondents' plan to impermissibly prolong his detention by moving him between detention centers violates the Fifth Amendment and is arbitrary and capricious, and (3) any bond hearing—should Respondents grant him one—would be insufficient under the requirements of the INA and the Fifth Amendment.[29] The court considers each argument in turn.

## I. Claim I: Arrest and Detention

Leon challenges his arrest and continued detention under the INA and the Due Process Clause.[30] The court first considers the INA arguments and then turns to the due process question.

### *A. INA*

Because Leon was detained in the interior of the United States years after his arrival to the country, his detention is governed by 8 U.S.C. § 1226.[31] Under the Section, immigration enforcement authorities may arrest and detain a noncitizen pending a removal decision "[o]n a warrant issued by the Attorney General."[32] "[Section] 1226 permits immigration officials to release the alien on bond subject to some exceptions."[33] A noncitizen may submit an application for an initial bond redetermination before an immigration judge.[34]

---

[29] *Petition* at 11–26.

[30] *Id.* at 11–17.

[31] *See Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1246 (10th Cir. 2026) (holding noncitizens arrested in the interior of the country may be detained pursuant to 8 U.S.C. § 1226, while mandatory detention under 8 U.S.C. § 1225 "is restricted to the border").

[32] 8 U.S.C. § 1226(a). The INA refers to noncitizens as "aliens." *See, e.g.*, *id.* § 1101(a). The term "alien" and "noncitizen" may be used interchangeably. *Compare Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 106 (2020) (using "aliens"), *with Thuraissigiam*, 591 U.S. at 158 (Sotomayor, J. dissenting) (using "noncitizens"). Accordingly, the court uses both terms throughout this Order.

[33] *Santillan Quiroz*, 180 F.4th at 1234 (quoting 8 U.S.C. § 1226(a)(2)(A)) (citation modified); *see also Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.").

[34] *See* 8 C.F.R. § 1003.19(b).

Leon contends his detention violates the INA because (1) "a judicial warrant for Mr. Leon's arrest was not issued before he entered ICE custody"; (2) "ICE has not made an individualized assessment of the risks he posed"; and (3) "to the extent ICE performed an individualized assessment, ICE did not give him the chance to rebut their assessment—before they took him into custody—by 'demonstrat[ing] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'"[35] Respondents contend that they followed the proper procedure for assuming custody of Leon and providing him the opportunity to request a bond redetermination.[36]

The court concludes Leon has not met his burden to establish his arrest violates the INA, but the effective denial of his requests for a bond hearing does violate the Act. First, ICE detained Leon pursuant to an immigration arrest warrant[37] and an individualized custody determination.[38] Leon contends the Notice of Custody Determination—which he refused to sign—does not show he was given an individualized determination of detention.[39] Leon provides no authority—and the court is aware of none—which provides that the standard custody determination form is insufficient to show an individualized assessment for detention, nor does he cite any other instance of a court overruling a detention for violating the INA on such grounds. The court is not prepared to do so here.

Second, Leon again does not provide any authority—and the court is aware of none—

---

[35] *Petition* at 13 (quoting 8 C.F.R. § 236.1(c)(8)).

[36] *Response* at 4.

[37] *See Arrest Warrant*.

[38] *See Notice of Custody Determination*.

[39] *Reply* at 4–5.

which states that the INA requires an immigration officer to provide a noncitizen with notice and opportunity to rebut their individualized assessment *before* re-arrest. Rather, the statute provides, "The Attorney General at any time may revoke a bond or parole[,] . . . rearrest the alien under the original warrant, and detain the alien."[40] "Nothing in the brief text of the statute and the accompanying regulations suggests that procedural protections such as notice of the intention to revoke parole, service of the evidence justifying revocation, and a hearing before a neutral arbitrator are required prior to re-arrest and redetention."[41]

While the INA does not require a pre-detention hearing, § 1226 and federal regulation both entitle Leon to a bond hearing once detained.[42] ICE did indeed initially offer Leon the opportunity to request a bond hearing.[43] However Leon reasonably did not sign the English-language document before speaking with his attorney because he was unable to understand it on his own.[44] Exercising his right to an attorney before signing such a document can hardly be called an affirmative decision declining a bond hearing. And since then, Leon has repeatedly verbally requested a bond hearing to no avail.[45] In their Sur-Reply, Respondents assert, "Petitioner can still request a bond hearing. He or his attorney would need to file a bond redetermination request with the Executive Office of Immigration Review [(EOIR)]. Not electing on the form does not prohibit Petitioner from getting a bond hearing before an

---

[40] 8 U.S.C. 1226(b).

[41] *O.F.C. v. Almodovar*, No. 25-cv-9816 (LJL), 2026 WL 74262, at *6 (S.D.N.Y. Jan. 9, 2026).

[42] *See Santillan Quiroz*, 180 F.4th at 1234; *Jennings*, 583 U.S. at 306; 8 C.F.R. § 236.1(d)(1) ("After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 240 becomes final, request amelioration of the conditions under which he or she may be released."); 8 C.F.R. 1236.1(d)(1) (providing the same); 8 C.F.R. § 236.1(d)(1) (also providing the same).

[43] *See Notice of Custody Determination*.

[44] *Response* at 3.

[45] *Leon's Sur-Reply* at 3, 4–5.

immigration judge."[46] It is unclear to the court how Leon—who is still searching for an immigration attorney[47]—could submit a request for a bond hearing to EOIR while being held in custody by any other method other than explicitly telling his guardians he wants a hearing. ICE's apparent refusal to grant the verbal requests is therefore a violation of the INA under these circumstances.

### *B. Due Process*

In addition to the INA, the Due Process Clause is also implicated in Leon's detention. The Fifth Amendment states, "No person shall . . . be deprived of life, liberty, or property, without due process of law."[48] The Clause provides detainees with the right to "notice and the opportunity to be heard 'appropriate to the nature of the case.'"[49] "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."[50] In cases involving noncitizens detained under § 1226, this court has found "because the government [previously] released Petitioner pursuant to § 1226(a), he is protected by the Due Process Rights created by" the statute.[51]

Leon challenges both his initial arrest and his continued detention under the Due Process Clause.[52] Leon argues his arrest violated the Due Process Clause because the decision to detain him "lacked any reasonable basis," and Leon was denied notice and an opportunity to respond.[53]

---

[46] *Respondents' Sur-Reply* at 4 n.9.

[47] *Leon's Sur-Reply* at 5.

[48] U.S. Const. amend. V.

[49] *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

[50] *Reno v. Flores*, 507 U.S. 292, 306 (1993).

[51] *Pena Becerra v. Sparks*, No. 2:26-cv-00212-JNP-DBP, 2026 WL 915439, at *4 (D. Utah Apr. 3, 2026).

[52] *Petition* at 13–17.

[53] *Id.*

The court is not persuaded. Ignoring the fact that Leon is currently charged with multiple counts of felony assault,[54] the court does not have jurisdiction to review the merits of ICE's discretionary decisions made pursuant to § 1226.[55] Therefore, the court cannot find ICE's decision to arrest Leon arbitrary and capricious. However, the court concludes Leon has been denied notice and an opportunity to respond. Leon's due process rights attached when he was released by immigration authorities after turning himself in at the Southern border to pursue an asylum claim.[56] He has since freely lived and worked in the United States.[57] Over that time, Leon gained a liberty interest in his freedom in the United States which is protected by the Due Process Clause.[58] He is therefore entitled to an opportunity to be heard to challenge his detention before an immigration judge. And as discussed above, Respondents have denied him this right by refusing his oral requests for a bond hearing. Accordingly, his detention is in violation of the Fifth Amendment.

## II. Claim II: Movement Between Detention Centers

Leon also challenges his detention on the grounds that ICE plans to extend his detention by repeatedly moving him between detention centers instead of granting him a bond hearing.[59] The court concludes this issue is not ripe for review. "In order for a claim to be justiciable under Article III, it must present a live controversy, ripe for determination, advanced in a 'clean-cut

---

[54] *Response* at 2.

[55] *See* 8 U.S.C. § 1226(e).

[56] *Petition* ¶ 3.

[57] *Id.* ¶¶ 3–4.

[58] *See Pena Becerra*, 2026 WL 915439, at *5 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does a noncitizen have a liberty interest in remaining out of custody on bond." (citation modified)); *Pruitt v. Heimgartner*, 620 Fed. App'x 653, 657 (10th. Cir. 2015) (providing that in a criminal law context, "[i]t is well-established that 'a liberty interest *inherent* in the Due Process Clause arises upon an inmate's *release* on parole from confinement'" (quoting *Boutwell v. Keating*, 399 F.3d 1203, 1212 10th Cir. 2005) (emphasis in original)).

[59] *Petition* at 18.

and concrete form.'"[60] The "[r]ipeness doctrine addresses a *timing* question: *when* in time is it appropriate for a court to take up the asserted claim."[61] To determine whether an issue is ripe for review, the court applies a two-factor test considering "the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration."[62]

Here, both factors indicate the issue is not ripe for review. First, the issue is not ready for judicial resolution because Leon alleges the Respondents only "*plan* to move him" between detention centers to prevent him from appearing before an immigration judge.[63] There is nothing in the record currently before the court that indicates Respondents actually do intend to transfer him to prevent a bond hearing. And second, because the court—as discussed below—will order a prompt bond hearing held within one week, there is no risk of hardship of being effectively denied a bond hearing by being transferred. Accordingly, this issue is not ripe for review at this time.

## III. Claim III: Inadequacy of Prospective Bond Hearing

Lastly, Leon challenges his detention on the grounds that "Respondents do not intend to give him a *constitutionally adequate* [bond] hearing, so he should not be required to wait in custody for such a hearing."[64] Leon contends any bond hearing he might be granted would be inadequate because the government unlawfully assigns the detainee the burden of showing he is not a threat to public safety or flight risk, and the government adjudicator "cannot be trusted to

---

[60] *Kan. Jud. Rev. v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008) (quoting *Renne v. Geary*, 501 U.S. 312, 322 (1991)).

[61] *ACORN v. City of Tulsa*, 835 F.2d 735, 738 (10th Cir. 1987) (quoting *Action All. of Senior Citizens v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986)).

[62] *Stout*, 519 F.3d at 1116 (quoting *Sierra Club v. Yeutter*, 911 F.2d 1405, 1415 (10th Cir. 1990)).

[63] *See Petition* at 18.

[64] *Id.* at 18–26 (emphasis in original).

provide the required 'independent judgment and discretion' in deciding custody."[65] Respondents contend that "[h]abeas proceedings, with no discovery or trial setting, are not an appropriate forum for a sweeping review of the constitutional adequacy of the process prescribed by Congress for handling immigration issues."[66] They further argue that ordering Leon's release "before an immigration judge even has a chance to review ICE's detention decision" would "strip[] ICE officers, the immigration court and, further down the line, the Board of Immigration Appeals, of jurisdiction over these decisions, and negate[] substantial portions of the Immigration and Nationality Act."[67] Leon does not respond to Respondents' arguments or otherwise address this third claim in either his Reply or Sur-Reply.[68]

The court concludes the challenge to any hypothetical bond hearing is also not ripe for review. First, the issue is not fit for judicial review. Currently, there is no bond hearing record for the court to review. The absence of a record also prevents Leon from lodging specific deficiencies. Instead of raising specific challenges, Leon asserts a myriad of possible violations and alleged systematic deficiencies of how immigrations courts have recently handled bond hearings in general.[69] Without a record and specific challenges, the court is ill-positioned to address the adequacy questions. Second, the hardship of withholding review until after Leon receives his bond redetermination decision is limited. Waiting would simply require him to proceed through the custody redetermination process as designed by Congress and recently ordered by the Tenth Circuit in circumstances such as this.[70] As Respondents note, ordering

---

[65] *Id.*; *id.* at 22 (quoting 8 C.F.R. § 1003.10(b)).

[66] *Response* at 6.

[67] *Id.*

[68] *See generally Reply*; *Leon's Sur-Reply*.

[69] *Petition* 18–26.

[70] *See Santillan Quiroz*, 180 F.4th at 1246–51 n.13 (holding noncitizen detained in the interior of the country cannot be subject to mandatory detention under 8 U.S.C. § 1226 and ordering petitioner be provided a bond hearing within

Leon's immediate release before any bond hearing is held or even requested would overturn the entire congressionally established custody determination process.[71] This is a step the court is not willing to take on an incomplete and undeveloped record. Accordingly, the court concludes that the claim is not ripe for review.

## IV. REMEDY

Having determined Leon's continued detention violates the INA and the Due Process Clause, the court now turns to the question of the appropriate remedy. Leon argues that due process entitles him to a pre-deprivation hearing which requires immediate release.[72] Leon further contends that if a bond hearing is ordered, due process requires the burden of proof to be placed on the government.[73] Respondents contend ordering immediate release would be an extraordinary remedy.[74]

To determine whether Leon is entitled to a pre-deprivation hearing under the Due Process Clause (and therefore immediate relief as a habeas remedy), the court applies the three-part framework established by the Supreme Court in *Mathews v. Eldridge*.[75] Under the test, the court must consider (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or

---

seven days or released).

[71] *Response* at 6.

[72] *Petition* at 15–17, 26; *Reply* at 6–7.

[73] *Reply* at 7–8.

[74] *Response* at 6.

[75] 424 U.S. 319 (1976).

substitute procedural requirement would entail."[76] The court examines each in turn.

### *A. Leon's Interest*

The first factor—Leon's interest at stake in the official action—weighs in favor of a pre-deprivation hearing, as it is his liberty at stake. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects."[77] This District has previously found that a noncitizen subject to removal "has a substantial private interest in remaining out of detention on bond" when the person has previously been released from ICE custody.[78] Accordingly, this factor leans toward granting immediate release.

### *B. Risk of Erroneous Deprivation*

The next factor is the risk of erroneous deprivation of Leon's interest through the procedures used and the value of substitute procedural safeguards.[79] Leon contends the risk of erroneous deprivation of liberty weighs in his favor because ICE had other options: it could have released him on his own recognizance or released him on bond.[80] The court disagrees.

Federal regulation governing detention of noncitizens pending removal provides that an immigration officer may, in their discretion, release the alien if he "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and

---

[76] 424 U.S. at 335.

[77] *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

[78] *Pena Becerra*, 2026 WL 915439, at *5; *see also Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) (finding the "petitioner has a liberty interest in his continued release on bond" because he had been previously free on bond for more than two years); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause.").

[79] *Mathews*, 424 U.S. at 335.

[80] *Petition* at 16.

that the alien is likely to appear for any future proceeding."[81] Immigration authorities presumably made such a determination regarding Leon when he was initially released on parole upon entering the country in 2022.[82] However, circumstances materially changed when Leon was arrested in May 2026 and charged with multiple violent felonies, including aggravated assault resulting in a serious bodily injury.[83] The presence of these pending charges indicates a likelihood that a judge will determine custody is proper, reducing the risk of erroneous deprivation. Additionally, the government did not have the option of granting Leon a pre-deprivation hearing before taking custody of him on an immigration detainer, as Leon was previously detained for two months in state custody and would therefore be unable to attend an immigration civil detention hearing.[84] Accordingly, the court concludes this factor weighs in favor of ordering a bond hearing.

*C. The Government's Interest*

The final factor is the "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[85] Leon contends "the government had no legitimate interest in detaining an individual with no criminal convictions who has been participating in the asylum process."[86] The court rejects this argument.

As Leon recognizes,[87] "the government has an obvious interest in 'protecting the public

---

[81] 8 C.F.R. § 236.1(c)(8).

[82] *See Petition* ¶¶ 3–4.

[83] *See Response* at 2.

[84] *See Petition* at ¶¶ 9–15.

[85] *Mathews*, 424 U.S. at 335.

[86] *Petition* at 16.

[87] *Id.*

from dangerous criminal aliens.'"[88] Though Leon has not yet been convicted of any of the charges brought against him, they remain pending. The government has a very real interest in determining whether—considering the charges and evidence upon which they rest—Leon's release would pose a danger to property or persons. This weighs in favor of ordering a bond hearing rather than release.

Considering the factors altogether, the court concludes Leon's Fifth Amendment due process rights would have been satisfied with a prompt bond redetermination hearing following his detention by ICE. The court recognizes that ICE's refusal to grant Leon's repeated requests for a hearing violated this right. However, the proper remedy is ordering a prompt bond hearing before an immigration judge, not granting immediate release.

*D. Burden of Proof*

The last question before the court is who bears the burden of proof at the bond hearing. Section 1226 does not specify which party bears the burden of proving whether a noncitizen is or is not eligible for bond.[89] However, federal regulation places the burden on the noncitizen to show that "release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."[90] Neither the Supreme Court nor the Tenth Circuit has addressed the question of whether assigning the burden of proof to a noncitizen subject to civil immigration detention comports with the Due Process Clause. Leon argues it does not, and when the court finds a habeas violation and declines to order immediate relief, "the proper habeas remedy is a prompt bond hearing at which the Government must prove, by clear and

[88] *Alrikabi v. Larose*, No.: 26cv2561 DMS (VET), 2026 WL 1990770, at *3 (S.D. Cal. Jul. 9, 2026) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022)).

[89] *See* 8 U.S.C. § 1226.

[90] 8 C.F.R. § 236.1(c)(8).

convincing evidence, that Petitioner is a flight risk or danger to the community."[91] Respondents do not respond to these arguments or otherwise address the question of burden in either their Reply or Sur-Reply.[92] Other courts addressing this issue have applied the *Mathews* framework to this question as well.[93] The court does so here and concludes the balance of factors weigh in favor of shifting the burden to the government.

1. Leon's Interest

Leon's interest in correctly assigning the burden of proof remains the same as in the previous analysis: his freedom. Accordingly, this factor again weighs in Leon's favor.

2. Risk of Deprivation

The second factor, risk of deprivation, leans in favor of assigning the burden of proof to Respondents. In *L.G. v. Choate*,[94] the District of Colorado held that the risk of deprivation of assigning the burden of proof in an immigration bond hearing to the petitioner was elevated because "proving a negative is difficult[,]" and under the federal regulation, the petitioner "had the burden to prove two – 1) he is *not* a flight risk, and 2) he is *not* a danger to the community."[95] The court further noted that "'[p]roving a negative (especially a lack of danger) can often be more difficult than proving a cause of concern.'"[96] The court agrees with this assessment. Because demonstrating he is not a flight risk and not a danger to the community requires Leon show an absence of evidence, assigning him the difficult burden of proving both negatives

---

[91] *Reply* at 7–8 (quoting *Jovel v. Noem*, No. 1:25-cv-01233-KG-DLM, 2026 WL 172723, at *2 (D.N.M. Jan. 22, 2026)); *Petition* at 19–20.

[92] *See generally Reply*; *Leon's Sur-Reply*.

[93] *See, e.g.*, *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1243 (D.N.M. 2025); *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024).

[94] 744 F. Supp. 3d 1172 (D. Colo. 2024).

[95] *Id.* at 1183 (emphasis in original).

[96] *Id.* at 1183–84 (quoting *Hernandez-Lara v. Lyons*, 10 F.4th 19, 31 (1st Cir. 2021)).

increases the risk of an erroneous outcome. Accordingly, this factor weighs in Leon's favor.

3. *Government's Interest*

The third factor— "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail"—is neutral.[97] In *Velasquez Salazar v. Dedos*,[98] the District of New Mexico determined that shifting the burden of proof to the Government does not undermine its interest because "the Government's interest in detaining Petitioner only outweighs his liberty interests if he is a flight risk or a danger to his community[,]" and shifting the burden does not "impose an unreasonable administrative or fiscal burden" because "[t]he Government has vast resources at its disposal to gather information about Petitioner's eligibility for bond."[99] The court agrees, and therefore finds this factor neutral. Because the first two factors weigh in favor of Leon, the court concludes that the Government shall have the burden of proof at the bond hearing.

4. Standard of Proof

Lastly, the court considers what standard of proof to impose—clear and convincing evidence, as Leon requests,[100] or the lower standard of preponderance of the evidence. In *Singh v. Holder*,[101] the Ninth Circuit held that the Government must show by clear and convincing evidence that a noncitizen detained pursuant to 8 U.S.C. § 1226 is a flight risk or danger to the community in order to deny him bail.[102] The Circuit relied on the principle that "due process places a heightened burden of proof on the State in civil proceedings in which the individual

[97] *Mathews*, 424 U.S. at 335.

[98] 806 F. Supp. 3d 1231 (D.N.M. 2025).

[99] *Id.* at 1244.

[100] *Reply* at 7–8.

[101] 638 F.3d 1196 (9th Cir. 2011).

[102] *Id.* at 1203–06.

interests at stake are both particularly important and more substantial than mere loss of money."[103] Considering Leon's substantial liberty interest at stake and the risk of erroneous deprivation, the court finds the Ninth Circuit's analysis persuasive. Accordingly, the court concludes the proper standard of proof is clear and convincing evidence.

## CONCLUSION

For the reasons discussed above, the court GRANTS the Petition.[104] Respondents are ORDERED to provide Leon with a bond redetermination hearing before an immigration judge within seven days. At the bond hearing, Respondents will bear the burden of proof to show by clear and convincing evidence that Leon is either a flight risk or a danger to the community. The court directs the Clerk of Court to close the case.

SO ORDERED this 1st day of October, 2026.

BY THE COURT

JUDGE ROBERT J. SHELBY
United States District Court

---

[103] *Id.* at 1204 (citation modified) (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996)).

[104] Dkt. 1.